IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CR-10-308-D |
| ) | |
| JOHN MIGUEL SWAN, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

This matter comes before the Court upon Defendant's Motion to Suppress Evidence [Doc. No. 13], which is opposed by the government. On November 29, 2010, the Court held an evidentiary hearing regarding the Motion. Defendant John Miguel Swan appeared personally and through his appointed counsel, William Earley. The government appeared through Special Assistant United States Attorney Ashley Altshuler. The Court heard the testimony of two police officers employed by the Oklahoma City Police Department (OCPD), Chris Spillman and Coy Gilbert, and received Defendant's exhibits, Nos. 1-5. The parties presented oral arguments and adopted their written briefs. Upon consideration of the evidence, the case record, and the parties' arguments, the Court finds and rules as follows on Defendant's Motion.

Defendant moves to suppress physical evidence that the government intends to introduce at trial to prove the charge of the Indictment that on or about August 7, 2010, Defendant knowingly possessed a firearm after a previous felony conviction, in violation of 18 U.S.C. § 922(g). The evidence showed that shortly after 3:00 a.m. on August 7, 2010, the OCPD officers encountered a car being driven by Defendant in a high-crime area of southeast Oklahoma City. The officers were on-duty and traveling separately in marked police vehicles. Both were experienced policemen, each

having been employed by OCPD for many years and having conducted hundreds of traffic stops. Officer Spillman first encountered Defendant's automobile, a Nissan Altima, while patrolling his assigned area; he was watching particularly for stolen cars and illegal drug activity. The two cars passed going opposite directions on South Oklahoma Avenue between Southeast 32nd Street and Southeast 33rd Street. Officer Spillman quickly turned his patrol car around to follow Defendant's car and see its license plate. Traveling southbound, Defendant sped up and quickly turned on the next cross-street, Southeast 33rd. Officer Spillman accelerated and tried to catch up. He visually approximated Defendant's speed to be about 30 m.p.h., exceeding the speed limit of 25 m.p.h. Officer Spillman did not activate his emergency lights or siren but continued to follow Defendant's car in an attempt to read the license plate.

Defendant made another turn when he reached the next intersection, heading north on Shields Boulevard toward Southeast 32nd. At this same time, Officer Gilbert was traveling northbound on Shields approaching Southeast 33rd, and Defendant turned directly in front of him. Officer Gilbert also observed Defendant's vehicle to be exceeding the posted speed limit, but he did not activate his lights or siren. Officer Gilbert accelerated to catch up to Defendant's car, having been told by Officer Spillman via radio to "get that tag." Defendant also accelerated and reached a speed of approximately 40-45 m.p.h. Defendant made another turn when he reached Southeast 32nd, quickly accelerated, and then turned abruptly into a driveway of a residence.

Throughout this time, Officer Gilbert followed closely behind Defendant's vehicle such that their cars were at times "almost bumper to bumper." Officer Gilbert pulled into the driveway behind Defendant's car in a manner that blocked its exit. Officer Gilbert deliberately positioned his patrol car so he had a clear view of the driver's side of Defendant's car. When he stopped behind Defendant's car, Officer Gilbert engaged a spotlight and clearly observed Defendant extend his left

2

arm and shoulder through the window opening and make a throwing motion. Officer Gilbert saw Defendant throw a shiny gun, clearly visible in the light and identifiable as a handgun, away from the vehicle toward the northwest. Officer Gilbert approached Defendant's vehicle, ordered Defendant out of the car, and detained him.

Officer Spillman arrived shortly thereafter and parked his patrol car behind Officer Gilbert's. Officer Gilbert reported to Officer Spillman that he had seen Defendant throw a gun from the vehicle, and described where it landed. Following Officer Gilbert's instructions, Officer Spillman found a silver semi-automatic .380 handgun in a grassy area of an adjacent driveway, approximately 10-12 feet from Defendant's car. During his testimony, Officer Gilbert referred to his written report and described the gun as the same gun charged in the Indictment. Officer Gilbert testified that he proceeded to make the gun safe, removed six rounds of ammunition, took the gun to his patrol car to check the serial number, and later delivered it to Officer Gilbert. Both officers testified it would have been clear to Defendant that police vehicles were following him and trying to catch up to his vehicle.

By his Motion, Defendant asserts that the police officers' pursuit of his car for several blocks was intimidating and coercive and that he submitted to their show of authority by pulling into the driveway. From this, Defendant contends he was seized the moment he stopped his vehicle and the thrown handgun was the fruit of an illegal detention without reasonable suspicion. Clearly, if Defendant discarded or abandoned the gun before he was "seized" – that is, before he had submitted to any show of authority – then it was lawfully recovered by the police. *See California v. Hodari D.*, 499 U.S. 621, 623-24 (1991); *United States v. Sanders*, 87 F. App'x 83, 87 (10th Cir. 2004).

The Tenth Circuit utilizes a burden-shifting analysis to resolve a motion to suppress evidence claimed to be the fruit of an unlawful detention:

> To successfully suppress evidence as the fruit of an unlawful detention, a defendant must first establish that the detention did violate his Fourth Amendment rights. The defendant then bears the burden of demonstrating a factual nexus between the illegality and the challenged evidence. Only if the defendant has made these two showings must the government prove that the evidence sought to be suppressed is not "fruit of the poisonous tree" . . . .

*United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (internal quotation and citations omitted); *see also United States v. Ladeaux*, 454 F.3d 1107, 1111 (10th Cir. 2006).

> In order for a defendant to meet his burden of showing a "factual nexus," he must, "[a]t a minimum . . . adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct [directed toward that complaining defendant]." In other words, "[i]n order to meet his initial burden under *Nava-Ramirez* and demonstrate the required factual nexus, [a defendant] must show that the [contraband] would never have been found but for his . . . unlawful detention."

*Ladeaux*, 454 F.3d at 1111 (quoting *Nava-Ramirez*, 210 F.3d at 1131) (alterations by the court in *Ladeaux*) (emphasis omitted).

As framed by Defendant's Motion, the question presented is: When did a seizure occur? This is a legal question. *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010). "When an officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen 'submit[s] to the assertion of authority.'" *Id.* (quoting *Hodari D.*, 499 U.S. at 625-26). An objective standard governs these issues:

> "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." The question of whether the suspect submitted to that authority is also an objective one.

*Id.* (quoting *Hodari D.*, 499 U.S. at 628). "In determining whether particular conduct constitutes submission to authority, we must examine the totality of the circumstances – the whole picture."

4

*Id*. at 1064 (internal quotation omitted). This is so because "'what may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away.'" *Id*. at 1064-65 (quoting *Brendlin v. California*, 551 U.S. 249, 262 (2007)). "Because the standard is an objective one, we consider whether a citizen has submitted to authority by examining the view of a reasonable law enforcement officer under the circumstances." *Id*. at 1065.

Here, the Court finds that the police officers' acts of pursuing Defendant in marked vehicles, without activating any light or siren or making any effort to effect a traffic stop, was not a show of authority. The officers followed Defendant for approximately three blocks – Officer Spillman at a close distance – in an effort to read the license plate of his car. The officers did not attempt to prevent Defendant from proceeding, nor did they communicate a demand to stop. In any event, if the officers' conduct did constitute a show of authority, the Court finds that Defendant did not submit to their authority by simply pulling into a driveway. The court of appeals concluded in *Salazar* that a person in a moving vehicle being pursued by a marked police car operating its emergency equipment did not submit to the show of authority by halting his vehicle. The court reasoned as follows:

> From the view of a prudent, cautious, and trained officer, [a suspect's still-moving vehicle] could have suggested a nascent attempt to flee, an effort to buy time so that he could dispose of contraband or formulate an explanation to provide to the officer, or simply a period of indecision before he determined what to do. In light of these reasonable interpretations of [the suspect's] backing up his pickup truck, we agree with the government that he did not submit to [the officer's] authority until he complied with the command to get out of the truck.

*Id*. at 1067. Similarly, here, Defendant's act of pulling into a driveway was not a submission to authority but, from the view of an experienced police officer, could reasonably have suggested another step in Defendant's effort to evade contact with the officers – either a nascent attempt to flee

5

on foot or retreat into the residence or an effort simply to buy time so he could hide contraband or formulate a plan or explanation. More importantly, the Court finds that the police officers would have been justified in conducting a traffic stop at any time after Defendant's vehicle began speeding away from them. The Court finds fully credible the officers testimony that both observed Defendant exceed the posted speed limits in the neighborhood where the pursuit occurred. Accordingly, any action taken by the officers to stop and detain Defendant would have been permissible based on the traffic violations they observed. *See*, *e.g.*, *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). In short, the Court finds no Fourth Amendment violation and no unconstitutional conduct directed at Defendant that caused the handgun to be discovered.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Evidence [Doc. No. 13] is DENIED.

IT IS SO ORDERED this 2nd day of December, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE